## HAMMOND *v.* BASCH.

PATENTS; INTERFERENCE; PRELIMINARY STATEMENTS; REDUCTION TO PRACTICE; MODELS; DILIGENCE.

1. Whether an amendment to a preliminary statement in an interference proceeding shall be allowed, is discretionary with the Commissioner of

Patents, and nothing less than an abuse of that discretion, causing a palpable miscarriage of justice, will warrant a review and a reversal of his action. (Following *Cross* v. *Phillips*, 14 App. D. C. 228.)

2. The sworn preliminary statements required when an interference has been declared constitute the pleadings of the parties, and they are to be held strictly to the dates given therein. (Following *Stevens* v. *Seher*, 11 App. D. C. 245; *Cross* v. *Phillips*, 14 App. D. C. 228; and *Bader* v. *Vajen*, 14 App. D. C. 241.)

3. While the construction of a full-size operative device may sometimes be regarded as reduction to practice although it has been called a model (following *Norden* v. *Spaulding*, ante, 286, and *Mason* v. *Hepburn*, 13 App. D. C. 86), such a model, so called, must be quite different from the ordinary model, which, while it may show the invention, is incapable of operation to effect its purposes.

4. Where, in a preliminary statement, an allegation of the construction of the model is followed by a separate allegation of reduction to practice in a full-size device upon a later date, the idea of intention to claim for the first construction anything more than conception is precluded, as the opposing party may have rested his case on later dates in view of such statement; and to admit proof of an earlier date of reduction to practice than that given would also seriously impair, if not destroy, the rule of certainty in pleading long maintained in the Patent Office.

5. No invariable rule of diligence can be prescribed for the government of all cases. Whether it has been exercised in a particular case must depend upon its special circumstances.

6. Where a party to an interference presents evidence of completion of the invention prior to the date to which he is restricted by his preliminary statement, such evidence may be entitled to some consideration upon the question of diligence, as tending to show that he had some reason to be satisfied with the practicability of his device.

7. When the lapse of time between the conception of one of the parties to an interference and his date of reduction to practice would be fatal, if unexplained; but his delay is claimed to have been caused by an infringement suit, which is also relied upon by the opposing party to explain his delay,—the latter is in no condition to take advantage of the omission of the former to show what there was in that suit to excuse delay in the matter of the invention.

No. 271. Patent Appeal. Submitted November 16, 1904. Decided January 3, 1905.

HEARING on appeal from a decision of the Commissioner of Patents in an interference case.                    *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. F. W. Smith* and *Mr. J. Edgar Bull* for the appellant.

*Mr. James C. Chapin* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Acting Commissioner of Patents in an interference case having the following issue:

"A hose-supporting device composed of two parts, each having a flange adapted to embrace one of the corset steels, one of said parts being adapted to engage the eye of the corset clasp and the other of said parts being adapted to engage the stud of the corset clasp, as and for the purpose described."

The application of the appellant, Myron B. Hammond, was filed March 26, 1902, and that of the appellee, David Basch, on April 29, 1902.

Basch claimed conception December 1, 1899, and reduction to practice January 3, 1901.

In his preliminary statement Hammond said:

"I conceived the invention set forth in the declaration of interference as early as May 1, 1900, and on that day I made a model showing such invention, and on said date showed and explained said invention and model to others. * * * I reduced said invention to practice by making a full-size device, and successfully tested and operated the same as early as February 1, 1901."

Both parties explain their delay by referring to a pending suit for infringement of a hose-supporter patent, against Hammond's associate, Thomas P. Taylor, which was finally determined adversely to them about March 12, 1902.

Hammond was the manager of the hose-supporter department of said Taylor, who was a manufacturer. The patent established in the suit was called the Parramore patent.

Hammond conceived the invention of the issue about May 1, 1900, in an attempt to produce a supporter that would not infringe the Parramore patent. What he called his model consisted of a pair of hose supporters which were worn by a female employee for a week and found to be satisfactory. Nothing more was done until the decision of the Parramore suit. Immediately thereafter preparations were made for the manufacture of the new device, and on March 29, 1902, they were advertised in the New York Dry Goods Economist. April 3, 1902, the first shipment of them was made, and during that month some 3,000 dozen were sold. On September 13, 1902, and before any testimony had been taken in this case, Hammond moved for leave to amend his preliminary statement, his object being to change the date of reduction to practice from February 1, 1901, to May 1, 1900, which was the date of the construction and use of the "model."

The ground of the motion was the alleged mistake of his attorney growing out of the preparation of a preliminary statement filed at the same time in another case of interference. The motion was denied by the Examiner of Interferences, whose ruling was affirmed on appeal to the Commissioner, and one of the reasons of appeal is based on that ruling.

Whether an amendment shall be allowed in an interference proceeding, under the rules of practice of the Patent Office, calls for the exercise of a wide latitude of discretion by the Commissioner, and certainly nothing less than an abuse of that discretion, causing a palpable miscarriage of justice, would warrant the review and reversal of his action. *Cross* v. *Phillips,* 14 App. D. C. 228, 237, 238.

We are unable to say that there was such an abuse of discretion in refusing the leave to amend in this case, though it would seem, from all that is disclosed on the face of the record, that the rule was enforced with much strictness. There is practically no evidence that either party had a conception of the invention prior to the date of his construction of the device upon which he relies for reduction to practice.

Considering the case upon the original statement, the Exam-

iner of Interferences confined Hammond to the date therein alleged, namely, February 1, 1901, and his decision turned upon the single question, whether the evidence of Basch showed actual reduction to practice on January 3, 1901. Being of the opinion that this showed nothing more than an abandoned experiment, he awarded priority to Hammond, who was the first to enter the Patent Office with an allowable application. He was reversed on appeal to the Examiners-in-Chief, and their decision having been affirmed by the Commissioner, priority was finally awarded to Basch.

There seems to be no reasonable doubt that, had Hammond's amendment been allowed, the final decision would have been in his favor, for whatever objections may be raised to the completeness of his first construction apply with equal, if not greater, force to that of Basch. The sufficiency of Hammond's evidence to show reduction of his invention to practice in May, 1900, need not be determined in our view of the question, whether that evidence can be considered under the allegations of his preliminary statement without amendment. The sworn preliminary statements required when an interference has been declared constitute the pleadings of the parties, and we have had occasion several times, and for reasons satisfactory now as then, to approve the practice of holding the parties strictly to the dates given therein. *Bader* v. *Vajen,* 14 App. D. C. 241, 254; *Stevens* v. *Seher,* 11 App. D. C. 245, 251; *Cross* v. *Phillips,* 14 App. D. C. 228, 236.

The appellant contends that the evidence ought all to be received and considered on the ground that the allegation of the construction of his model on May 1, 1900, is substantially a statement of reduction to practice on that day, and hence that the subsequent allegation of a later date of actual reduction to practice may be disregarded.

The argument is that the allegation of the construction of a "model," illustrating so simple an invention as a hose supporter, implies a reduction to practice.

There is no doubt that the construction of a full-size device, capable of use to a sufficient extent to demonstrate the practical

utility of the invention, may often be regarded as a reduction to practice, notwithstanding it may have been called a model, as well as intended by the inventor to be used as a model for the construction of a like device of better and different materials, when there has been some test or application to use. *Norden* v. *Spaulding, ante,* 286; *Mason* v. *Hepburn,* 13 App. D. C. 86, 89.

Such a model, so called, must be quite different from the ordinary model, which, while it may show the invention, is incapable of operation to effect its purpose. However, the cases must be few, if any, indeed, in which the construction and disclosure of a device intended as an illustrative model, merely, without some test of its capacity to perform the service intended, could be accepted, not only as evidence of conception, but of reduction to practice also.

It is sufficient to say that this "model" was not of that character.

Whether the allegation, in a preliminary statement, of the construction of a model showing this invention, simple as it may be, and its exhibition to others on a certain day, would, without anything more, reasonably indicate to the opposing party that it was then and there actually reduced to practice, is not the question. Hammond did not content himself with such an indefinite statement, but went on to say:

"I reduced said invention to practice by making a full-sized device and successfully tested and operated the same as early as February 1, 1901."

This direct and certain allegation of actual reduction to practice upon a later date, following the other in due order, cannot be disregarded as matter of surplusage. It precludes the idea of an intention to claim for the first construction anything more than a conception of the invention; hence it would be unreasonable to expect his opponent to anticipate the introduction of evidence tending to show reduction to practice, also, at that time. It may be, therefore, that this is the reason why the latter was content to rest his case upon evidence tending to show an earlier date of reduction to practice than that alleged

by Hammond, and did not try to prove with any certainty an earlier conception prosecuted with due diligence.

To admit the contention of the appellant would seriously impair, if not destroy, the rule of certainty in pleading, long maintained in the Patent Office.

Though we have grave doubts whether Basch's evidence is sufficient to show a successful reduction to practice on January 3, 1901, we will assume that it is. Upon this assumption the only question that remains to be considered is, whether Hammond, having been the first to conceive the invention, has lost his right thereto, as against Basch, through failure to exercise reasonable diligence in its prosecution. Our conclusion is that he has not. No invariable rule of diligence can be prescribed for the government of all cases. Whether it has been exercised in a particular case must depend upon its special circumstances. The lapse of time between Hammond's conception and the only act of reduction to practice that we are at liberty to consider under the allegations of his preliminary statement, was great, and would be fatal if unexplained. His delay, it appears, was caused by the Parramore infringement suit. It is true that it does not clearly appear what there was in that suit to excuse delay in the matter of this invention, but Basch is in no condition to take advantage of the omission to show it. He, like Hammond, was watching the proceedings in that suit and waiting for its final determination. Having acted upon the assumption that there was something involved in its issue to account reasonably for his own delay, he cannot be heard to deny the reasonableness of that of Hammond. Although what Hammond did in the way of testing his so-called model in May, 1900, cannot be received as showing reduction to practice at that time, it is entitled to some consideration, under the peculiar circumstances, as bearing upon the question of his exercise of reasonable diligence. It tends, at least, to show that he had some reason to be satisfied with the practicability of his model, and that it was only held in abeyance until it could be definitely ascertained whether or not it would be covered by the Parra-

more patent when the scope of the latter should be finally determined.

Immediately, then, upon the establishment of the Parramore patent by a decision rendered March 12, 1902, and believing that his model was not covered by its determined claims, he went energetically to work.

The manufacture was begun at once, and patent was applied for on March 26, 1902. The product was brought to the attention of the trade by advertisement, on March 29, and the first shipment was made April 3, 1902. During April about 3,000 dozen were sold. This was in marked contrast with the action of Basch, who had no lack of means to do the same thing. Under the special circumstances of the case, we think that his previous delay should in justice be excused.

For this reason the decision appealed from will be reversed. It is so ordered, and the clerk is directed to certify this decision to the Commissioner of Patents.                         *Reversed.*

A motion by the appellee for a rehearing was denied.